IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ENTERGY ARKANSAS, LLC PLAINTIFF

v. NO. 4:26cv899-LPR

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
SEP 01 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

ARKANSAS DEMOCRAT-GAZETTE, INC.;
SYDNEY SASSER;
ARKANSAS TIMES LP;
BYRON TATE; and
JESSICA KIVELL DEFENDANTS

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

For its complaint, plaintiff Entergy Arkansas, LLC ("EAL") states:

1. EAL brings this action to prevent further dissemination and disclosure of trade secrets contained in highly sensitive protected information ("HSPI") that EAL submitted to the Arkansas Public Service Commission ("PSC"). The PSC has mistakenly disclosed EAL's trade secrets in response to a Freedom of Information Act ("FOIA") request made by one of the defendants in this action. Further disclosure of that information poses grave harm to EAL and violates both federal and state law, so EAL seeks a temporary restraining order, a preliminary injunction, and a permanent injunction.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and under 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the claim

This case assigned to District Judge Rudofsky
and to Magistrate Judge Ervin

that arises under Arkansas law because that claim is so related to EAL's federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants reside in this district and because a substantial part of the events or omissions giving rise to EAL's claims occurred in this district.

4. EAL is a public utility organized and existing under the laws of the State of Texas and is authorized to do business in and provide electricity to residents of Arkansas.

5. Defendant Arkansas Democrat-Gazette, Inc. ("ADG") is an Arkansas corporation with its principal place of business in Arkansas.

6. On information and belief, defendant Sydney Sasser is an individual resident of Pulaski County, Arkansas, a citizen of Arkansas, and an employee of the ADG.

7. On information and belief, defendant Arkansas Times LP ("Arkansas Times") is an Arkansas limited partnership with its principal place of business in Arkansas.

8. On information and belief, defendant Byron Tate is an individual resident of Pulaski County, Arkansas, a citizen of Arkansas, and an employee of the Arkansas Times.

9. On information and belief, defendant Jessica Kivell is an individual resident of Pulaski County, Arkansas, and a citizen of Arkansas.

10. The Court has personal jurisdiction over each of the defendants because they either reside or are located in this district and are subject to the jurisdiction of Arkansas courts of general jurisdiction.

## FACTUAL ALLEGATIONS

11. Altitude Capital, LLC ("Altitude") is developing and building a data center near West Memphis, Arkansas. As part of that development, Altitude and EAL negotiated a services agreement. The services agreement contains both EAL's and Altitude's confidential, proprietary, and highly sensitive trade secrets, so the parties agreed to specific confidentiality protections in the services agreement to shield their trade secrets from disclosure.

12. In compliance with Arkansas law, EAL filed the services agreement and other information related to the services agreement with the PSC under an HSPI designation to safeguard its confidentiality. On EAL's motion, the PSC entered an interim protective order protecting the services agreement and its terms from public disclosure.

13. The services agreement contains business information that EAL and Altitude have taken reasonable measures to protect, and that information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

14. On June 2, 2026, Sasser, who is a reporter for the ADG, requested information protected by the interim protective order through a FOIA request to the

PSC. The PSC responded and provided non-confidential materials but withheld other materials as exempt from disclosure under Ark. Code Ann. § 23-2-316(b)(2) and Ark. Code Ann. § 25-19-105(b)(8).

15. Sasser and the ADG then sued the PSC in the Circuit Court of Pulaski County, Arkansas, No. 60CV-26-7792 ("Pulaski County FOIA Action"), under the Arkansas FOIA to obtain disclosure of additional materials. Both EAL and Altitude moved to intervene in that lawsuit to defend the confidentiality of their trade secrets related to the services agreement. On July 28, 2026, the state court dismissed the Pulaski County FOIA Action for lack of subject-matter jurisdiction, given that the information was subject to a nondisclosure order at the PSC.

16. On August 31, 2026, Sasser emailed EAL employees to request comment about the services agreement. Sasser's email contained specific details from the services agreement that have not been made public and that have been shielded from public disclosure. Those details are EAL's and Altitude's trade secrets.[1]

17. On information and belief, Sasser obtained the details included in her email from Kivell, who made her own FOIA request to the PSC and received materials marked as HSPI that the PSC disclosed in error, in violation of its own interim protective order, and contrary to the position it took in July 2026 in the

[1] Because the email contains trade secrets, EAL has not attached a copy to this complaint. EAL will file a copy of the email under seal at the appropriate time.

Pulaski County action. Further on information and belief, the mistakenly disclosed materials containing EAL's and Altitude's trade secrets is marked as HSPI.

18. On information and belief, Kivell has also provided to the mistakenly disclosed materials containing EAL's and Altitude's trade secrets to Tate and the Arkansas Times. Further on information and belief, Tate and the Arkansas Times intend to disclose EAL's mistakenly disclosed trade secrets by publishing a story in the Arkansas Times or on its website.

19. On information and belief, Kivell remains in possession of EAL's mistakenly disclosed trade secrets contained in the materials she received from the PSC. Further on information and belief, Kivell intends to disclose EAL's trade secrets through additional disclosures made to media outlets or through other channels.

20. On August 31, 2026, counsel for EAL sent an email to Sasser, Tate, and Kivell alerting them to the fact that the services agreement information containing EAL's trade secrets had been mistakenly disclosed to Kivell, reiterating the sensitivity of the information, and requesting that they and their employers refrain from further disclosure of those trade secrets lest they violate state and federal protections for trade secrets.

21. Despite counsel's email, later on August 31, 2026, Sasser and the ADG published a story that contained EAL's trade secrets. On information and belief, defendants are in possession of additional trade secrets not included in that story and plan to publish them as well.

**COUNT I:**
**Violation of the Defend Trade Secrets Act**
**(18 U.S.C. § 1831 et seq.)**

22. 18 U.S.C. § 1839(3) defines "trade secret" as including

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

23. The services agreement between EAL and Altitude contains trade secrets under 18 U.S.C. § 1839(3) because it contains proprietary pricing and technical information exchanged between EAL and Altitude. EAL and Altitude have taken reasonable measures to keep that proprietary pricing and information secret through the confidentiality protections in the services agreement itself, as well as through the interim protective order that Entergy sought and obtained from the PSC. And that information derives economic value, actual or potential, from not being generally known or readily ascertainable through proper means to EAL's and Altitude's competitors, who can obtain economic value from the disclosure or use of the information.

24. 18 U.S.C. § 1839(5)(B)(iii) defines "misappropriation" as "disclosure or use of a trade secret of another without express or implied consent" by someone who "before a material change of the position of the person, knew or had reason to know that—(I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake."

25. Kivell misappropriated EAL's trade secrets by disclosing them to Sasser and the ADG or by otherwise using them despite knowing that information marked HSPI in the materials she received from the PSC contained trade secrets and despite knowing that she had acquired the trade secrets in those materials by accident or mistake.

26. Sasser and her employer, the ADG, misappropriated and might further misappropriate EAL's trade secrets by disclosing them in their August 31, 2026, story and by otherwise using them despite knowing before any material change in position that the information that Kivell received from the PSC contained trade secrets and despite knowing before any material change in position that Kivell had acquired the trade secrets in those materials by accident or mistake. Sasser and the ADG's knowledge before any material change in position that the material contained trade secrets is shown by their participation as parties in the Pulaski County FOIA Action, in which the PSC, EAL, and Altitude briefed the issue and asserted that the services agreement contained HSPI that included trade secrets belonging to EAL and to Altitude. Given those arguments made barely more than a month ago, Sasser and ADG knew that the PSC's disclosure of EAL's trade secrets

was an accident or a mistake. In addition, Sasser and ADG received EAL counsel's email before publishing the story, and that email informed them that the disclosure had been mistaken or accidental.

27. Tate and his employer, the Arkansas Times, misappropriated or might misappropriate EAL's trade secrets by disclosing them by otherwise using them despite knowing before any material change in position that the information that Kivell received from the PSC contained trade secrets and despite knowing before any material change in position that Kivell had acquired the trade secrets in those materials by accident or mistake. On information and belief, the Arkansas Times was aware of the Pulaski County Action and thus knew before any material change in position that the services agreement contained trade secrets and that any disclosure of those trade secrets was an accident or a mistake. Moreover, Tate and the Arkansas Times were aware that the information that Kivell provided to them contained trade secrets and that it had been disclosed by accident or mistake no later than the receipt of the email from EAL's counsel on August 31, 2026.

28. 18 U.S.C. § 1836(b)(1) permits the owner of a misappropriated trade secret to bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. The data center for which EAL and Altitude entered the services agreement provides services in interstate or foreign commerce.

29. 18 U.S.C. § 1836(b)(3)(A) permits the Court to enter a remedy of injunctive relief "to prevent any actual or threatened misappropriation" of a trade

secret, as well as an order "requiring affirmative actions to be taken to protect the trade secret."

30. EAL requests that the Court enter a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting each of the defendants from further disclosure of EAL's trade secrets relating to the services agreement and ordering them to destroy all copies of those trade secrets. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

31. 18 U.S.C. § 1836(b)(3)(B) also permits an award of damages for actual loss caused by the misappropriation of a trade secret. At this time, EAL does not seek damages, but it reserves the right to seek damages for any disclosure that has already occurred or should any of the defendants further disclose EAL's trade secrets that the PSC mistakenly disclosed.

**COUNT II:**
**Violation of the Arkansas Uniform Trade Secrets Act**
**(Ark. Code Ann. § 4-75-601 et seq).**

32. Ark. Code Ann. § 4-75-601(4) defines "trade secret" as including information that "(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B)

Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

33. The services agreement between EAL and Altitude contains trade secrets under Ark. Code Ann. § 4-75-601(4) because it contains proprietary pricing and technical information exchanged between EAL and Altitude. EAL and Altitude have taken reasonable measures to keep that proprietary pricing and information secret through the confidentiality protections in the services agreement itself, as well as through the interim protective order that Entergy sought and obtained from the PSC. And that information derives economic value, actual or potential, from not being generally known or readily ascertainable through proper means to EAL's and Altitude's competitors, who can obtain economic value from the disclosure or use of the information.

34. Ark. Code Ann. § 4-75-601(2)(b)(iii) defines "misappropriation" as "disclosure or use of a trade secret of another without express or implied consent" by someone who "before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

35. Kivell misappropriated EAL's trade secrets by disclosing them to Sasser and the ADG or by otherwise using them despite knowing that information marked HSPI in the materials she received from the PSC contained trade secrets and despite knowing that she had acquired the trade secrets in those materials by accident or mistake.

36. Sasser and her employer, the ADG, misappropriated and might further misappropriate EAL's trade secrets in their August 31, 2026, story by disclosing them and by otherwise using them despite knowing before any material change in position that the information that Kivell received from the PSC contained trade secrets and despite knowing before any material change in position that Kivell had acquired the trade secrets in those materials by accident or mistake. Sasser and the ADG's knowledge before any material change in position that the material contained trade secrets is shown by their participation as parties in the Pulaski County FOIA Action, in which the PSC, EAL, and Altitude briefed the issue and asserted that the services agreement contained HSPI that included trade secrets belonging to EAL and to Altitude. Given those arguments made barely more than a month ago, Sasser and ADG knew that the PSC's disclosure of EAL's trade secrets was an accident or a mistake. In addition, Sasser and ADG received EAL counsel's email before publishing the story, and that email informed them that the disclosure had been mistaken or accidental.

37. Tate and his employer, the Arkansas Times, misappropriated or might misappropriate EAL's trade secrets by disclosing them by otherwise using them despite knowing before any material change in position that the information that Kivell received from the PSC contained trade secrets and despite knowing before any material change in position that Kivell had acquired the trade secrets in those materials by accident or mistake. On information and belief, the Arkansas Times was aware of the Pulaski County Action and thus knew before any material change

in position that the services agreement contained trade secrets and that any disclosure of those trade secrets was an accident or a mistake. Moreover, Tate and the Arkansas Times were aware that the information that Kivell provided to them contained trade secrets and that it had been disclosed by accident or mistake no later than the receipt of the email from EAL's counsel on August 31, 2026.

38. Ark. Code Ann. § 4-75-604(a) provides that "actual or threatened misappropriation may be enjoined." Ark. Code Ann. § 4-75-605 provides that the Court may preserve the secrecy of a trade secret by "ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."

39. EAL requests that the Court enter a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting each of the defendants from further disclosure of EAL's trade secrets relating to the services agreement and ordering them to destroy all copies of those trade secrets. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

40. Ark. Code Ann. § 4-75-606(a) provides that "in addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation." At this time, EAL does not seek damages, but it reserves the right to seek damages for any disclosure that has already occurred or should any of

the defendants further disclose EAL's trade secrets that the PSC mistakenly disclosed.

**<u>Request for Temporary Restraining Order</u>**

41. Both the federal and state trade secrets laws cited in this complaint provide for injunctive relief to prevent actual or threatened misappropriation of trade secrets.

42. Fed. R. Civ. P. 65(b) provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

43. In addition, the Court considers a temporary restraining order using the same factors as used to consider a preliminary injunction: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the nonmovant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

44. Here, EAL's trade secrets could be published by any of the defendants at any time, and publication of those trade secrets would result in immediate and irreparable harm to EAL because its trade secrets would become public information with no recourse to restore its confidentiality. "The disclosure of any such trade

secret may constitute irreparable harm because disclosure permanently erases its secret status." *Triosim Corp. v. Young*, No. 4:26-CV-4045, 2026 WL 1831648, at *3 (W.D. Ark. June 25, 2026) (applying both federal and state trade secrets law) (citations omitted).

45. As for the balance of the harms, no harm would come to defendants from an order prohibiting them from disclosing EAL's trade secrets. Defendants have no right to possession of those trade secrets and only came into possession of them through the PSC's apparent mistake. Nor will defendants face any economic harm from an order prohibiting further disclosure of the trade secrets.

46. EAL is likely to succeed on the merits of its claims under federal and state law. In the Pulaski County Litigation, the PSC, EAL, and Altitude all agreed that the services agreement contained trade secrets belonging to EAL and Altitude that merited protection from public disclosure. EAL and Altitude's competitors would derive an unfair advantage should they obtain those trade secrets, which only came into the hands of the defendants through a mistake or accident on the part of PSC. Defendants have no legitimate claim to possess those trade secrets and no legitimate claim to disclose them. Any disclosure is a misappropriation. EAL is thus likely to succeed on the merits of its claims.

47. Finally, the public interest weighs in favor of a temporary restraining order. The public interest is reflected in the federal and state laws enacted to protect trade secrets from disclosure, including disclosures made by mistake or by accident. *See Triosim*, *supra*, at *7 ("The public interest in protecting trade secrets

is apparent from the Arkansas and federal statutory schemes established to protect them."). And "general interests in honest competition and fair play support" injunctions against disclosure and use of trade secrets. *Id.*

48. Because the relevant factors weigh in favor of injunctive relief in favor of EAL, the Court should enter a temporary restraining order prohibiting each of the defendants from further disclosing or otherwise using EAL's trade secrets mistakenly disclosed by the PSC. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

49. As shown in the attached certification by EAL's attorney, efforts have been made to provide notice to defendants via email. As further shown in the certification, notice should not be required here because of the pressing nature of the interests involved and the threat of imminent harm should the Court not act immediately.

**<u>Request for Preliminary and Permanent Injunctive Relief</u>**

50. For the same reasons that EAL is entitled to issuance of a temporary restraining order, it is also entitled to preliminary and permanent injunctive relief prohibiting the defendants from further use or disclosure of EAL's trade secrets. In short, (1) Entergy faces a threat of irreparable harm should its trade secrets be published by defendants; (2) injunctive relief will pose no harm to the defendants;

(3) EAL is likely to succeed on the merits; and (4) the public interest supports protecting trade secrets from misappropriation and public disclosure.

51. Accordingly, the Court should enter a preliminary injunction prohibiting each of the defendants from further disclosing or using EAL's trade secrets mistakenly disclosed by the PSC during the pendency of this action. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

52. At the conclusion of this action, the Court should enter a permanent injunction prohibiting each of the defendants from further disclosing or using EAL's trade secrets mistakenly disclosed by the PSC and directing each of the defendants to destroy all copies of the trade secrets and to certify their destruction to the Court. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

WHEREFORE, Entergy Arkansas, LLC requests that the Court enter a temporary restraining order, preliminary injunction, and permanent injunction against defendants prohibiting them from using or disclosing Entergy Arkansas, LLC's trade secrets, along with all other proper relief.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
slancaster@wlj.com; gmarts@wlj.com

By ______________________________
Stephen R. Lancaster (93061)
Gary D. Marts, Jr. (2004116)

Attorneys for Entergy Arkansas, LLC

## VERIFICATION

STATE OF Arkansas

COUNTY OF Pulaski

I, David Plalmer, do hereby state, under oath, that the facts and information set forth in the foregoing verified complaint are true and correct to the best of my knowledge, information, and belief.

David Palmer

Date: 9-1-26

Title: Vice President, Regulatory Affairs

## ACKNOWLEDGEMENT

STATE OF ARKANSAS

COUNTY OF Pulaski

On this the 1 day of September 2026, before me, a Notary Public, personally appeared David Palmer and he executed the foregoing instrument for the purposes therein contained, by signing his name.

Audri Denise Kocsis
Notary Public

AUDRI DENISE KOCSIS
MY COMMISSION # 12357208
EXPIRES: November 2, 2028
Saline County