IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ENTERGY ARKANSAS, LLC PLAINTIFF

v. NO. 4:26cv899-LPR

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
SEP 01 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

ARKANSAS DEMOCRAT-GAZETTE, INC.;
SYDNEY SASSER;
ARKANSAS TIMES LP;
BYRON TATE; and
JESSICA KIVELL DEFENDANTS

**BRIEF IN SUPPORT OF MOTION**
**FOR EX PARTE TEMPORARY RESTRAINING ORDER**

As detailed in Entergy Arkansas, LLC's ("EAL") verified complaint, EAL brings this action to prevent further dissemination and disclosure of trade secrets contained in highly sensitive protected information ("HSPI") that EAL submitted to the Arkansas Public Service Commission ("PSC"). The PSC has mistakenly disclosed EAL's trade secrets in response to a Freedom of Information Act ("FOIA") request made by one of the defendants in this action. Defendants Sydney Sasser and the Arkansas Democrat-Gazette ("ADG") have already published some of EAL's trade secrets and appear poised to publish more of them. EAL also fears that the other defendants—the Arkansas Times, Byron Tate (an employee of the Arkansas Times), and Jessica Kivell might make further disclosures of EAL's trade secrets. Further disclosure of that information poses grave harm to EAL and violates both



3

federal and state law, so EAL seeks a temporary restraining order to prevent additional disclosure.

**FACTUAL ALLEGATIONS IN VERIFIED COMPLAINT**

Altitude Capital, LLC ("Altitude") is developing and building a data center near West Memphis, Arkansas. As part of that development, Altitude and EAL negotiated a services agreement. The services agreement contains both EAL's and Altitude's confidential, proprietary, and highly sensitive trade secrets, so the parties agreed to specific confidentiality protections in the services agreement to shield their trade secrets from disclosure.

In compliance with Arkansas law, EAL filed the services agreement and other information related to the services agreement with the PSC under an HSPI designation to safeguard its confidentiality. On EAL's motion, the PSC entered an interim protective order protecting the services agreement and its terms from public disclosure.

The services agreement contains business information that EAL and Altitude have taken reasonable measures to protect, and that information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

On June 2, 2026, Sasser, who is a reporter for the ADG, requested information protected by the interim protective order through a FOIA request to the PSC. The PSC responded and provided non-confidential materials but

withheld other materials as exempt from disclosure under Ark. Code Ann. § 23-2-316(b)(2) and Ark. Code Ann. § 25-19-105(b)(8).

Sasser and the ADG then sued the PSC in the Circuit Court of Pulaski County, Arkansas, No. 60CV-26-7792 ("Pulaski County FOIA Action"), under the Arkansas FOIA to obtain disclosure of additional materials. Both EAL and Altitude moved to intervene in that lawsuit to defend the confidentiality of their trade secrets related to the services agreement. On July 28, 2026, the state court dismissed the Pulaski County FOIA Action for lack of subject-matter jurisdiction, given that the information was subject to a nondisclosure order at the PSC.

On August 31, 2026, Sasser emailed EAL employees to request comment about the services agreement. Sasser's email contained specific details from the services agreement that have not been made public and that have been shielded from public disclosure. Those details are EAL's and Altitude's trade secrets.[1]

On information and belief, Sasser obtained the details included in her email from Kivell, who made her own FOIA request to the PSC and received materials marked as HSPI that the PSC disclosed in error, in violation of its own interim protective order, and contrary to the position it took in July 2026 in the Pulaski County action. Further on information and belief, the mistakenly disclosed materials containing EAL's and Altitude's trade secrets is marked as HSPI.

[1] Because the email contains trade secrets, EAL has not attached a copy to this complaint. EAL will file a copy of the email under seal at the appropriate time.

On information and belief, Kivell has also provided to the mistakenly disclosed materials containing EAL's and Altitude's trade secrets to Tate and the Arkansas Times. Further on information and belief, Tate and the Arkansas Times intend to disclose EAL's mistakenly disclosed trade secrets by publishing a story in the Arkansas Times or on its website.

On information and belief, Kivell remains in possession of EAL's mistakenly disclosed trade secrets contained in the materials she received from the PSC. Further on information and belief, Kivell intends to disclose EAL's trade secrets through additional disclosures made to media outlets or through other channels.

On August 31, 2026, counsel for EAL sent an email to Sasser, Tate, and Kivell alerting them to the fact that the services agreement information containing EAL's trade secrets had been mistakenly disclosed to Kivell, reiterating the sensitivity of the information, and requesting that they and their employers refrain from further disclosure of those trade secrets lest they violate state and federal protections for trade secrets. Despite counsel's email, later on August 31, 2026, Sasser and the ADG published a story that contained EAL's trade secrets. On information and belief, defendants are in possession of additional trade secrets not included in that story and plan to publish them as well.

## ARGUMENT

Fed. R. Civ. P. 65(b) provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable

injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. As shown in the attached certification by EAL's attorney, efforts have been made to provide notice to defendants via email. As further shown in the certification, notice should not be required here because of the pressing nature of the interests involved and the threat of imminent harm should the Court not act immediately.

In addition to the Rule 65(b) requirements, the Court considers a temporary restraining order using the same factors as used to consider a preliminary injunction: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the nonmovant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

Each of those four factors weighs in favor of a temporary restraining order. On the first factor, EAL's trade secrets have been published by Sasser and the Arkansas Democrat-Gazette and additional trade secrets could be published by any of the defendants at any time. Further publication of those trade secrets would result in immediate and irreparable harm to EAL because its trade secrets would become public information with no recourse to restore its confidentiality. "The disclosure of any such trade secret may constitute irreparable harm because disclosure permanently erases its secret status." *Triosim Corp. v. Young*, No. 4:26-

CV-4045, 2026 WL 1831648, at *3 (W.D. Ark. June 25, 2026) (applying both federal and state trade secrets law) (citations omitted).

As for the balance of the harms, no harm would come to defendants from an order prohibiting them from disclosing EAL's trade secrets. Defendants have no right to possession of those trade secrets and only came into possession of them through the PSC's apparent mistake. Nor will defendants face any economic harm from an order prohibiting further disclosure of the trade secrets.

On the third factor, EAL is likely to succeed on the merits of its claims under federal and state law. In the Pulaski County Litigation, the PSC, EAL, and Altitude all agreed that the services agreement contained trade secrets belonging to EAL and Altitude that merited protection from public disclosure. EAL and Altitude's competitors would derive an unfair advantage should they obtain those trade secrets, which only came into the hands of the defendants through a mistake or accident on the part of PSC. Defendants have no legitimate claim to possess those trade secrets and no legitimate claim to disclose them. Any disclosure is a misappropriation. EAL is thus likely to succeed on the merits of its claims.

Finally, the public interest weighs in favor of a temporary restraining order. The public interest is reflected in the federal and state laws enacted to protect trade secrets from disclosure, including disclosures made by mistake or by accident. *See Triosim*, *supra*, at *7 ("The public interest in protecting trade secrets is apparent from the Arkansas and federal statutory schemes established to protect them.").

And "general interests in honest competition and fair play support" injunctions against disclosure and use of trade secrets. *Id.*

Because the relevant factors weigh in favor of injunctive relief in favor of EAL, the Court should enter a temporary restraining order prohibiting each of the defendants from further disclosing or otherwise using EAL's trade secrets mistakenly disclosed by the PSC. EAL also requests that the Court direct defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets. In addition, EAL requests that the Court order the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

## CONCLUSION

For the reasons stated in EAL's verified complaint, motion for temporary restraining order, and this brief, the Court should enter an ex parte temporary restraining order (a) restraining and enjoining defendants each of the defendants from further disclosing or otherwise using EAL's trade secrets mistakenly disclosed by the PSC; (b) directing defendants to disclose all other individuals or organizations to whom they have disclosed EAL's trade secrets; and (c) ordering the defendants to remove from their websites and publications any disclosure of EAL's trade secrets that has already occurred.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
slancaster@wlj.com; gmarts@wlj.com

By ______________________
Stephen R. Lancaster (93061)
Gary D. Marts, Jr. (2004116)

Attorneys for Entergy Arkansas, LLC